UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. H-13-578 |
| § | |
| FRANK MONTGOMERY, § | |
| a/k/a BONES § | |
| Defendant § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and, Albert A. Balboni, Assistant United States Attorney, and Defendant, Frank Montgomery, and Defendant's counsel, David Cunningham, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.  Defendant agrees to plead guilty to Count Forty-Four of the Indictment. Count Forty-Four charges Defendant with Conspiracy to Pay and Receive Kickbacks, in violation of Title 18, United States Code, §371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment or proven to a jury or judge beyond a reasonable doubt.

## Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, §371 is a term of imprisonment of not more than five years and a fine of not more than $250,000.00. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. Title 18, United States Code, §§ 3559(a) and 3583(b). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to two years, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e) (3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Cooperation

4. The parties understand this Agreement carries the potential for a motion for departure under § 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to § 5K1.1 of the <u>Sentencing Guidelines</u>. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 21 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

5. Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant, including, but not limited to, health care fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

>   (a) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to

waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(b)  Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(c)  Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(d)  Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation.

(e)  Should the recommended departure, <u>if any</u>, not meet Defendant's expectations, Defendant understands he remains bound by the terms of this Agreement and that he cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal

6.  Defendant is aware that Title 28, United States Code, § 1291, and Title 18, United States Code, § 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence imposed, or the manner in which the sentence was determined. Additionally, Defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to contest his conviction or

sentence by means of any post-conviction proceeding.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce his guilty plea** and is binding on neither the United States, the Probation Office, nor the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

    (a) If Defendant pleads guilty to Count Forty-Four of the Indictment and persists in that plea through sentencing, and if the

5

Court accepts this Plea Agreement, the United States will move to dismiss any remaining counts of the Indictment at the time of sentencing;

(b) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2)- level downward adjustment under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.);

(c) If Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States may move for an additional one (1)-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his/her role in the offense.

10. The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Indictment. The Defendant understands and agrees that this Plea Agreement is limited to offenses arising from the charged conduct in the Southern District of Texas.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right to:

(a) bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

6

(b) set forth or dispute sentencing factors or facts material to sentencing;

(c) seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

(a) appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain

bound to fulfill all of the obligations under this Plea Agreement.

## Rights at Trial

13. Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

   (a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

   (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

   (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he *is* guilty of the charges contained in Count Forty-Four of the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a

reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

From in or around September 2008, and continuing thereafter to in or about May 2010, in the Houston Division of the Southern District of Texas, and elsewhere, Defendant Frank Montgomery a/k/a Bones engaged in a conspiracy to receive and pay kickbacks with co-defendants Seryan Mirzakhanyan a/k/a Sam, Zaven Pogosyan a/k/a Mike a/k/a Mike Torres, Edvard Shakhbazyan, Anna Bagoumian, unindicted co-conspirator Percy Bates a/k/a Mr. Frank, and others. Mirzakhanyan, Pogosyan, Shakhbazyan, and Bagoumian each worked at one or more medical clinics in Houston, Texas. The three clinics were located at 2110 Jefferson Street, Suite 107 (Jefferson Clinic); 2112 Pease Street (Pease Clinic); and 6892 Southwest Freeway, Suite A-2 (Southwest Freeway Clinic). Montgomery was a patient marketer/recruiter who worked with Bates to locate Medicare beneficiaries who were willing to go to one of the three clinics in return for a cash payment of approximately $100 per visit. Montgomery drove an SUV to pick up patients and take them to the clinics. Bates told him which clinic to take the patients each day. Montgomery usually made $200 to $300 a day picking up patients at the McDonald's across from the bus station. In the beginning, Bates paid the patients that Montgomery transported to the clinics with money he had received from the clinics. Eventually, Montgomery began receiving cash directly

from the clinics and paid the patients. The first time Montgomery received the cash directly it was through a woman working behind the desk at the Jefferson Clinic; who has been identified as co-defendant Anna Bagoumian. Montgomery asked Bagoumian for the "package" and she directed him to go to the bathroom in the back and get an envelope from the medicine cabinet. Montgomery retrieved an envelope from the medicine cabinet which contained cash. Montgomery paid $100.00 cash to each of the approximately eight patients he drove that day. After that, Montgomery was directed to get the money from the bathroom by Bagoumian as well as by co-defendants Mirzakhanyan, Pogosyan, and Shakhbazyan. He would usually tell Bagoumian when the patients were ready to go and he would be directed to the bathroom to get the money. Montgomery took patients to the Jefferson Clinic for approximately three months. When the Jefferson clinic closed, whoever was running it moved to the Pease location and opened a new clinic. Montgomery took patients to the Pease Clinic for approximately six months before the Southwest Freeway location was opened. The Southwest Freeway Clinic was only open for a couple of months. Most of the time, Bates was told how many patients to take to the clinics by Mirzakhanyan, Pogosyan, or Shakhbazyan and he relayed that information to Montgomery. Sometimes the clinics needed more patients so Bagoumian, Mirzakhanyan, Pogosyan, or Shakhbazyan would tell Montgomery directly to get so many additional patients. Montgomery took

different patients to the clinics three to four times per week for a total of twenty to twenty-seven patients per week. Montgomery received envelopes of cash for taking patients to all three of the clinics. He never took a patient to the clinics without being paid. During the course of the conspiracy, Montgomery either was directed to the bathroom medicine cabinet for the money by, or he received the envelope of cash directly from, Bagoumian, Mirzakhanyan, Pogosyan, or Shakhbazyan. Montgomery was paid at least $6,200,00 in cash for referring patients to the clinics. On or about September 28, 2009, Bagoumian cashed a $5,500.00 check made payable to her. On or about September 29, 2009, Montgomery was paid cash in return for bringing Medicare beneficiaries to the Pease Clinic allegedly for diagnostic testing. On that same day, Montgomery paid Medicare beneficiaries for coming to the Pease Clinic allegedly for diagnostic testing. Medicare was billed for the diagnostic tests allegedly performed on the patients brought to the clinics by Montgomery. None of the testing was medically necessary and most of it was never done.

### Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation

of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) by the deadline set by the United States, or if no deadline is set, prior to sentencing. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the

United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim incurred a monetary loss of at least $153,000.00. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution

order imposed by the Court.

21.  Defendant stipulates and agrees that the factual basis for his/her guilty plea supports the forfeiture of at least $ 6,200.00 against him and in favor of the United States.  Defendant agrees to forfeit any of his property, or his interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

22.  Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23.  Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Rule 32.2(b)(4)(A), Fed.R.Crim.Pro.

24.  Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

25.  Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.

Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

26.   This written Plea Agreement, consisting of 18 pages, including the attached addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the United States, Defendant, and his counsel.  No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement.  Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

27. Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at Houston, Texas on ___February 3___, 2014.

*Frank Montgomery*
Frank Montgomery
Defendant

Subscribed and sworn to before me on ___February 3___, 2014.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By: _____
Albert A. Balboni
Assistant United States Attorney
Southern District of Texas
Telephone: 713-567-9726
Facsimile: 713-718-3304

_____
David Cunningham
Attorney for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | CRIMINAL NO. H-13-578 |
| FRANK MONTGOMERY, a/k/a BONES | § § § | |
| Defendant | § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____
David Cunningham
Attorney for Defendant

2/3/14
Date

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's <u>Guidelines Manual</u> which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms.

_____    2/3/14
Frank Montgomery            Date
Defendant